**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REMOI OKOCCI                    :        CIVIL ACTION
                                :
     vs.                        :
                                :        NO. 02-2631
KLEIN, C.O., ET AL.             :


**MEMORANDUM AND ORDER**


**JOYNER, J.**                                    **July     , 2003**


    Plaintiff brings due process and equal protection claims
under 42 U.S.C. § 1983 and defamation claims.  Previously, this
court has dismissed Plaintiff's Eighth Amendment claims against
Defendants John Doe and Corrections Officer Klein[1].  This leaves
the procedural due process, equal protection, and defamation
claims against Sgt. Brown and Warden Wagner to be addressed.  In
their motion for summary judgment on the remaining claims,
Defendants argue that Plaintiff's claims fail because Plaintiff
was not deprived of his constitutional rights and further that
Defendants are entitled to qualified immunity barring the claims.
For the following reasons, Defendants' motion shall be granted.


**Factual Background**

    During a fire drill in the evening, "alien inmates"

---
[1] Via order dated November 15, 2002

1

assembled in the prison yard at the Berks County Prison.  While
Plaintiff was in the prison yard, his cell was searched.  Prison
officials, Shift Commander John Doe and Correction Officer Klein
handcuffed Plaintiff and his cell-mate.  Upon asking why he was
being handcuffed, Shift Commander John Doe and Correction Officer
Klein presented a shank with a tape handle[2].  Plaintiff denied
that the shank was his and asked Shift Commander Doe to preserve
the shank and to conduct fingerprint analysis.  Plaintiff
believed that the shank had been planted in his cell and that
fingerprint analysis would reveal that it was not his.   A few
days later, Plaintiff was brought before Sgt. Brown for a
disciplinary hearing on the charge of possessing the shank.
Plaintiff asked Sgt. Brown several times for a fingerprint
analysis of the shank, requests which Sgt. Brown denied.  Sgt.
Brown showed Plaintiff a picture of the "shank" and asked if it
was his.  Plaintiff denied that the "shank" was his and again
asked for a fingerprint analysis.  Sgt. Brown found Plaintiff
guilty and sentenced him to twenty days in punitive segregation.
Plaintiff appealed the denial of the fingerprint analysis to
Warden Wagner who upheld Sgt. Brown's decision.

## Legal Standard for Summary Judgment

Summary judgment is intended to prevent needless and costly

---

[2] Amended Complaint, pg. 2

2

trials where there are no genuine issues of material fact and the
moving party is entitled to judgment as a matter of law.  Celotex
Corp. v Catrett, 477 U.S. 317, 322-32, 91. L. Ed. 2d 265, 106 S.
Ct. 2548 (1986).  Summary judgment is proper "...if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).

     In evaluating a motion for summary judgment, the evidence
should be viewed and all reasonable inferences drawn in favor of
the non-moving party.  Nieves v. Dragovich, 1997 U.S. Dist. LEXIS
23410, *2 (E.D. Pa. 1997) *citing* Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).  The
court will hold a pro se plaintiff bringing a civil rights suit
to a less stringent standard than a trained lawyer, liberally
construing the plaintiff's allegations.  Nieves, *2 *citing* Hughes
v. Rowe, 449 U.S. 5, 9, 66 L.Ed. 2d 163, 101 S. Ct. 173 (1980).
An issue of material fact is genuine "if the evidence is such
that a reasonable jury could return a verdict for the non-moving
party."  Liberty Lobby, Inc., 477 U.S. at 248.

     Movants have the initial burden of showing the court a lack
of genuine issues of material fact and can do so simply by
pointing out that there is a lack of evidence to support the

3

non-moving party's case.  Movants need not support a motion with affidavits or other materials negating the non-moving party's claim.  <u>Celotex</u>, 477 U.S. at 322-23.  To rebut the motion, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. at 324 quoting Fed.R.Civ.P. 56(e).  The plaintiff must "present affirmative evidence" aside from the pleadings themselves to defeat a proper motion for summary judgment.  <u>Nieves,</u> at *3 *quoting* <u>Liberty Lobby</u>, 477 U.S. at 257.

## **Legal Standard for Qualified Immunity**

The goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).  Government officials performing discretionary functions are entitled to qualified immunity as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated.  <u>Id.</u>  Qualified immunity should be defeated if the official "knew or should have known" that the action he was taking would violate the rights of the plaintiff or if he took the action with malicious intent to

deprive the plaintiff of his constitutional rights. Id., at 815 *quoting* Wood v. Strickland, 420 U.S. 308, 322, 43 L. Ed. 2d 214, 95 S. Ct. 992 (1975). The action of the official must be considered in the context of whether the law on the issue was clearly established at the time the action occurred. If the law was not established clearly, qualified immunity holds since a public official "could not reasonably be expected to anticipate subsequent legal developments." Harlow, 457 U.S. at 818. Stated another way, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). To determine whether qualified immunity bars a claim, two questions must be answered. Would a constitutional right have been violated on the facts alleged, taken in the light most favorable to the accusing party? Saucier v. Katz, 533 U.S. 194, 201 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) *citing* Siegert v. Gilley, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S.Ct. 1789 (1991). If so, was that right clearly established in the law in terms of the circumstances such that the official should have known that his action would violate the right in question? Id at 201-02. If the answer to both of these questions is yes, then qualified immunity does not bar the claim. However, if the answer to both is no, then summary judgment on the basis of qualified immunity

is appropriate.  <u>Id.</u>

## <u>Discussion</u>

a. Procedural Due Process

Defendants argue that Plaintiff's due process rights with
respect to disciplinary hearings are determined by <u>Wolff v.
McDonnell</u>, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).
According to the Supreme Court in that case, prisoners'
constitutional rights are subject to some restrictions.  However,
due process in prison disciplinary hearings requires that (1) the
prisoner be given written notice of the claimed violation at
least twenty-four hours in advance, (2) there must be a "written
statement by the factfinders as to the evidence relied on and
reasons" for the disciplinary action and (3) the prisoner be
given the opportunity to call witnesses and present documentary
evidence in his defense.  <u>Id</u>. at 564-66.  The right to have the
opportunity to bring witnesses and evidence before the hearing is
limited to situations where allowing this will not be "unduly
hazardous to institutional safety or correctional goals."  <u>Id</u>. at
566.  The court recognizes the importance of protecting prison
officials' discretion to keep hearings reasonable by disallowing
witnesses or limiting inmate's access to collect statements or
compile other evidence.  <u>Id.</u>  Although Plaintiff has some right

to present evidence in a disciplinary hearing, that right is significantly tempered by discretion on the part of prison officials. Id.., also Jones v. N.Carolina Prisoners' Labor Union, 433 U.S. 119, 125-28, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977).

Plaintiff counters that, in fact, he is a detainee, not a prisoner, so his rights should be controlled by Bell v. Wolfish, 441 U.S. 739, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979), rather than Wolff. Plaintiff does in fact appear to be a detainee, rather than a prisoner[3]. In Bell, pretrial detainees challenged the constitutionality of various conditions of their confinement. That Bell is controlling does not diminish the role of Wolff in determining the extent of Plaintiff's rights under the Due Process Clause of the 14th amendment. The Bell Court held that in evaluating the constitutionality of restrictions or conditions of pretrial detention, a court should assess whether the conditions are in fact punishment of the detainee. Id. at 535. The Bell Court also established that pretrial detainees' rights are at least equivalent to the rights afforded prisoners, including the due process protections for disciplinary hearings that Wolff establishes. Id. at 545.

---

[3] Pretrial detainees are "persons who have been charged with a crime, but who have not yet been tried on that charge." Bell v. Wolfish, 441 U.S. 520, 523 (1979). The term detainee also includes those in custody awaiting hearing or deportation by the Immigration or Naturalization Service. Ortega v. Rowe, 796 F.2d 765 (5th Cir. 1986)

However, Plaintiff takes this a step further in arguing that, as a detainee, he is actually entitled to stronger due process protection for disciplinary hearings than a prisoner would receive under <u>Wolff.</u>  According to this argument, Plaintiff would essentially have a constitutional right to have the prison prepare evidence for him.  This procedural due process right is not established in the law, certainly not with the level of clarity for the prison officials required by <u>Harlow</u>, <u>Anderson</u>, and <u>Saucier</u>, and not to the degree that a prison official should have known that in denying the fingerprint analysis he would be violating Plaintiff's due process rights.  We, therefore, find that defendants are entitled to summary judgment on the basis of qualified immunity on the procedural due process issue.

b. Equal Protection

The Equal Protection clause of the Fourteenth Amendment can be understood as protecting similarly situated parties from differences in treatment based on impermissible considerations.  The Equal Protection clause bars purposeful discrimination.  In order to demonstrate a violation of equal protection rights in this case, Plaintiff must show that parties similarly situated were permitted fingerprint analyses and that the denial of the analysis in Plaintiff's case was purposeful discrimination. <u>Government of Virgin Islands v. Harrigan</u>, 791 F.2d 34, 36 (3rd Cir. 1986); <u>Sabatini v. Reinstein</u>, 1999 U.S. Dist. LEXIS 12820,

*4-5 (E.D. Pa. 1999).

Plaintiff argues that since possession of controlled substances and contraband possession are both Class I offenses in the prisoner's handbook and since urinalysis is required in drug possession cases, the denial of a fingerprint analysis in his case constitutes a violation of his equal protection rights.

This claim fails for two reasons. First, drug charges and possession of a knife are two very distinct charges. It would be a stretch to claim that possession of a shank and possession of drugs are the same thing. In addition, Plaintiff has stated that he knows of no situations where persons charged with possession of a shank were given fingerprint analysis[4]. However, even if possession of a shank and possession of drugs were considered similar situations, Plaintiff has failed to provide evidence of an purposeful discrimination, which is required for an equal protection claim. Plaintiff has alleged that he was discriminated against on the basis of his status as an alien and that he believes that there are instructions for corrections officers to open disciplinary files on aliens[5]. However, these allegations are insufficient evidence of an purposeful discrimination since (1) Plaintiff is not certain whether the

---

[4] Exhibit A, Deposition of Remoi Okocci, pg. 43, lines 3-5, pg. 44, line 15, pg. 45, line 5.

[5] Exhibit A, Deposition of Remoi Okocci, pg. 35, lines 23-25, pg. 36, lines 1-8

instructions are posted where he believes them to be and (2) there are compelling state interests in opening files on alien inmates at the prison.  Since Plaintiff's claim does not rise to the level of a violation of his constitutional rights, summary judgment for defendants is proper.

c. Substantive Due Process

Plaintiff argues that there is a substantive due process violation stemming from his allegation that the guard planted the shank in Plaintiff's cell.  He alleges that Sgt. Brown's denial of the fingerprint analysis constitutes an "intentional and callous" disregard for Plaintiff's rights[6].  In addition, Plaintiff alleges that Warden Wagner's refusal to overturn Sgt. Brown's decision evidenced an "intentional and callous disregard" for Plaintiff's rights[7].

This claim fails as a matter of law for several reasons.  First, while there appear to be no cases in the Third Circuit that involve the filing of unfounded charges against a prisoner resulting in disciplinary action, courts in this district have consistently found that such claims fail as a matter of law, as long as the requirements of Wolff are met, as they are here.  Urbanski v. Horn, 1998 U.S. Dist. LEXIS 15031, *14 (E.D. Pa. 1998).  Second, any claim like this has been dealt with as a

---

[6] Amended Complaint, pg. 5

[7] Amended Complaint, pg. 8

10

procedural due process claim, not a substantive due process
claim.  Id.  The Third Circuit does not recognize substantive due
process claims in cases like these.  Id.  Finally, "the
substantive component of the due process clause can only be
violated by government employees when their conduct amounts to an
abuse of official power that shocks the conscience."  Rauso v.
Vaughn, 2000 W.L. 873 285, *36 (E.D. Pa. 2000), citing Gross v.
Taylor 1997 W.L. 535872 at *15, citing Fagan v. Vineland, 22 F.3d
1296, 1303 (3rd Cir. 1994).  In exercising their discretion to
deny Plaintiff the fingerprint analysis, Sgt. Brown and Warden
Wagner did not "abuse" their official power.  Nor does their use
of their power "shock the conscience."  Rauso, *36.  Therefore,
there is no substantive due process claim recognized in this
complaint.

   d. Supervisory Liability

   The doctrine of respondeat superior may not be used under 42
U.S.C. § 1983.  Nieves, at *21 citing Blanche Road Corp. v.
Bensalem Township, 57 F.3d 253, 263 (3rd Cir. 1995) citing Monell
v. Dept. of Social Services, 436 U.S. 658, 691, 56 L.Ed.2d 611,
98 S.Ct. 2018 (1978).  In order to find a supervisor liable under
§ 1983, the Plaintiff must "show some affirmative conduct" by the
supervisor "which played a role in the violation.  Such personal
conduct may be shown by demonstrating that [the supervisor]
'participated in violating plaintiff's rights, or that he

directed others to violate them, or that he, as the person in charge ... had knowledge of and acquiesced in his subordinates' violations.'" <u>Nieves,</u> at *21, *quoting* <u>Moon v. Dragovich</u>, 1997 U.S. Dist. LEXIS 4786, *2 (E.D. Pa. 1997) and <u>Baker v. Monroe Township,</u> 50 F.3d 1186, 1190 (3rd Cir. 1995). In addition, supervisory liability requires a causal connection between the supervisor's actions and the violation of plaintiff's rights. <u>Id.;</u> <u>Shaw v. Strackhouse</u>, 920 F.2d 1135, 1147 (3rd Cir. 1990); <u>Sample v. Diecks,</u> 885 F.2d 1099, 1118 (3rd Cir. 1989).

Failure to train and supervise is usually raised in the context of municipal liability under 42 U.S.C. § 1983. However, courts have held that a supervisor may be found individually liable under § 1983 if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1078 (8th Cir. 1996) *citing* <u>Tilson v. Forrest City Police Dep't</u>, 28 F.3d 802, 806, *cert. denied*, 115 S.Ct. 1315 (1995). Plaintiff must demonstrate that the failure to provide that specific training can reasonably be said to reflect deliberate indifference to or tacit authorization of offending acts. <u>Fowler</u>, 98 F.3d at 1078. In establishing deliberate indifference, Plaintiff must show that the supervisor had notice that training procedures and supervision were inadequate and were likely to result in constitutional violation. <u>Belcher v. City of Foley</u>, 30 F.3d

12

1390, 1395-6 (11th Cir. 1994), <u>Andrews</u> at 1078, *citing,* <u>Thelma D.</u>
<u>by Delores A. v Board of Educ</u>., 934 F.2d 929, 934 (8th Cir.
1991), *citing*, <u>Harris</u>, 489 U.S. at 396.

In order for Warden Wagner to be liable, Warden Wagner or
his subordinates must have violated Plaintiff's constitutional
rights.  Plaintiff alleges that unidentified prison officials
planted the shank in his cell.  However, Plaintiff has presented
no evidence to support this claim beyond his allegations in his
deposition.  These statements offer no hard evidence and are,
therefore, insufficient to overcome a motion for summary
judgment.

We, therefore, find that Plaintiff has failed to show that
there is a genuine issue of material fact as to whether his
constitutional rights were violated, and whether Warden Wagner
exhibited deliberate indifference to this violation.  Summary
judgment shall be granted to Warden Wagner for both the equal
protection and due process claims.

In addition, under the doctrine of constructive possession,
Plaintiff is responsible for contraband found in his cell.  <u>White</u>
<u>v. Kane</u>, 860 F. Supp. 1075, 1079 (E.D. Pa. 1994).  *See* <u>Griffin v.</u>
<u>Spratt</u>, 969 F.2d (3rd Cir. 1992).  The doctrine has been extended
so far as situations where other inmates claimed responsibility
for contraband found during cell searches.  <u>Id</u>.  Finally, Sgt.
Brown and Warden Wagner were well within their discretion under

Wolff in finding the guard's report more credible than
Plaintiff's testimony and denying Plaintiff fingerprint analysis
of the shank.


        e. Municipal Liability

     Claims against individual officials in their official
capacity are the equivalent of a claim against the municipality
that employs him.  Kentucky v. Graham, 473 U.S. 159, 165-66, 87
L.Ed.2d 114, 105 S.Ct. 3099 (1985).  Where suit is brought
against a municipality under § 1983, the municipality is only
liable when the plaintiff can show that the municipality itself,
by implementing a municipal policy, regulation or decision either
formally adopted or informally adopted through custom, actually
caused the alleged constitutional transgression.  Monell v. N.Y.
Department of Social Services, 436 U.S. 658; Colburn v. Upper
Darby Township, 946 F.2d 1017, 1027 (3rd Cir. 1991); City of
Canton v. Harris, 489 U.S. 378, 385, 103 L.Ed.2d 412, 109 S.Ct.
1197 (1989).  The municipality is liable where its policy or
custom itself violates the Constitution or when the custom or
policy, while not unconstitutional in and of itself, is the
"moving force" behind the constitutional violation.  Colburn, 946
F.2d at 1027 quoting, Polk County v. Dodson, 454 U.S. 312, 70
L.Ed.2d 412, 109 S.Ct. 1197 (1989).  The policymaker must have
authorized policies that led to the violations or permitted

14

practices that were so permanent and well settled as to establish acquiescence. Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3rd Cir. 1991), *cert. denied*, 503 U.S. 985

A municipality may be liable for deficient policies regarding hiring and training where (1) the municipality's hiring and training practices are inadequate and (2) the municipality was deliberately indifferent to the rights of others in adopting them, such that the "failure to train reflects a deliberate or conscious choice by a municipality." Andrews v. Fowler, 98 F.3d at 1076, quoting, Harris, 489 U.S. at 389. In addition, the alleged deficiency in the hiring procedures must have actually caused the injury. Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir.), *cert. denied*, 506 U.S. 824 (1992). In order to find defendant liable under a failure to train theory, the plaintiff must show deliberate indifference on the part of municipality to the rights of the plaintiff. Harris, 489 U.S. at 388. The municipality must have had actual or constructive notice that training was inadequate to protect constitutional rights, which notice is implied where failure to train officers or employees is so likely to result in violation of constitutional rights that the need for training is patently obvious. Thelma D., 934 F.2d at 934, *citing*, Harris, 489 U.S. at 390. "... [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different

training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent..." Harris, 489 U.S. at 389-90.  Notice of deficiency can also be found where the need for additional training is not obvious, but where a pattern of constitutional violations could put the municipality on notice that employees' responses to recurring issues are not enough to protect constitutional rights. Thelma D., 934 F.2d at 935, *citing* Harris, 489 U.S. at 397. Montgomery v.  DeSimone, 159 F.3d 120 (3rd Cir. 1998).  Finally, the identified deficiency in training must be closely related to the constitutional violation, such that there is a "causal nexus." Colburn, 946 F.2d at 1028-1030, *citing*, Harris, 489 U.S. at 391.

Defendants have argued that this suit is the equivalent of a suit against Berks County.  In addition, defendants argue that Plaintiff failed to properly plead in that the complaint did not allege a cause of action based on policy or custom that caused the Plaintiff to suffer a violation of constitutionally guaranteed rights.  Defendants assert that Plaintiff has not identified a policy or custom through discovery on which to place his theory of recovery.  Finally, Defendants assert a lack of evidence.

Plaintiff seems to be arguing that using 28 U.S.C. §

1367(a), he can include the governmental entity as a pendent party defendant and that state law might allow recovery on a respondeat superior basis for an employer.  Plaintiff argues that the inmate handbook provides a clear indication of a written institutional policy that a mere denial of a charge could still result in a finding of guilt.  He argues that officers were instructed to open disciplinary files against I.N.S. detainees and that there is an informally-adopted policy by custom in which inmates found with planted shanks were not provided opportunity to provide documentary evidence[8].  Plaintiff argues that Warden Wagner is the policymaker and that the municipality is liable.

Plaintiff's reference to the inmate handbook as indicating that the denial of a charge could still result in a finding of guilt does not demonstrate an institutional policy that caused the violation of his constitutional rights.  This policy is consistent with the law which affords prison officials a great deal of discretion to make determinations about the relative credibility of the parties involved in a disciplinary hearing.  White v. Kane, 860 F. Supp. 1075, 1079 (E.D. Pa. 1994); Jones v. N. Carolina Prisoners' Labor Union, 433 U.S. 119, 129, 53 L.Ed.2d 629, 97 S.Ct. 2532 (1977).   While a detainee may deny the charges, the presiding prison official may find the officer who found the shank more credible than the detainee.  This

---

[8] Plaintiff's Response to Motion for Summary Judgment, pg.11

determination is within the hearing official's authority and
discretion.

Second, Plaintiff has provided no evidence that there is a
pattern of prison officials planting evidence in detainees' cells
in order to bring false charges.  While this kind of activity
might signal a pattern of violations of constitutional rights,
Plaintiff has not met his burden of production under Celotex with
regard to this claim and so summary judgment is granted in favor
of Defendants on this claim as well.

        f. Defamation

        Plaintiff's defamation claim under § 1983 fails as a matter
of law.  In order to state a claim under § 1983 for defamation,
Plaintiff must show that Defendants injured a constitutionally
protected interest in Plaintiff's reputation.  Garner v. Township
of Wrightstown, 819 F.Supp 435, 440 (E.D. Pa. 1993).  A § 1983
action does not arise when Defendant has defamed Plaintiff and
injured his reputation without other damages.  Id. at 441,
citing, Kulwicki v. Dawson, 969 F.2d 1454, 1468 (3rd Cir. 1992).
Plaintiff must meet the "reputation plus" damages standard which
requires monetary or professional damages in addition to damages
to Plaintiff's reputation.  Id. at 442.  In the case at bar, the
finding of guilt in the disciplinary hearing does not constitute
an injury to Plaintiff's constitutional interest in his
reputation for two reasons.  First, the hearing officials were

within their discretion to find Plaintiff guilty.  Second,
Plaintiff has not presented evidence to meet the "reputation
plus" standard.

In countering the motion for summary judgment, Plaintiff
argues that, even if a defamation claim under § 1983 cannot
stand, pendent jurisdiction allows federal court to entertain
state claims under 28 U.S.C. § 1367 pursuant to 42 Pa. C.S.A. §
8343(a).  He argues that the disciplinary conviction on his
prison record is defamatory in nature and has been published by
the defendants.  Plaintiff argues that this disciplinary hearing
affects his I.N.S. detention, noting C.F.R. regulations on
factors to consider in determining whether to further detain or
release.

The test for a state defamation claim requires Plaintiff to
allege: (1) defamatory character of communication; (2) its
publication by Defendant; (3) its application to Plaintiff; (4)
the understanding by the recipient of its defamatory meaning; (5)
the understanding by the recipient of it as intended to be
applied to Plaintiff; (6) special harm resulting to Plaintiff
from its publication; and (7) abuse of a conditionally privileged
occasion.  Clemente v. Espinosa, 749 F. Supp. 672 (E.D. Pa. 1990)
citing 42 Pa. C.S.A. § 8343(1).

Plaintiff has failed to meet the requirements of a
defamation claim.  First, Plaintiff fails to meet the requirement

of a defamatory statement.  A statement is defamatory "if it
tends so to harm the reputation of another as to lower him in the
estimation of the community or to deter third parties from
associating or dealing with him." Espinosa, 749 F. Supp. at 676,
*quoting*, Cosgrove Studio and Camera Shop, Inc. v Pane, 408 Pa.
314, 318 (1962).  The court must look at what a recipient either
"correctly, or mistakenly but reasonably, understands" the
communication to mean. Espinosa, 749 F. Supp. at 676-77, quoting,
Restatement (Second) of Torts § 563 (1977).  The finding of guilt
in the disciplinary hearing did not constitute a defamatory
statement since it was within the discretion of Sgt. Brown to
find Plaintiff so.  In addition, Plaintiff has failed to make a
showing of special harm, another of the requirements of a
defamation claim.

Even under the exception to special harm rule for slander
where Plaintiff may succeed in a defamation claim without proof
of special harm where the spoken words are slander per se,
Plaintiff's defamation claim is insufficient.  Espinosa, 749 F.
Supp. at 677.  There are four categories of words that constitute
slander per se: words imputing: criminal offense, loathsome
disease, business misconduct, serious sexual misconduct.  Id.
citing Restatement (Second) of Torts § 570 (1977).  A statement
constitutes slander per se as an accusation of criminality when
it charges either directly or indirectly the commission of a

criminal offense punishable by imprisonment.  Espinosa, 749 F.
Supp. at 679, *citing,* Burns v. Supermarkets General Corp., 615 F.
Supp. 154, 157 (E.D. Pa. 1985).  The case at bar does not
constitute slander per se as an accusation of criminality since
the disciplinary hearing's finding of guilt was proper.  Summary
judgment is therefore granted for all defendants on the
defamation claim.

     An order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REMOI OKOCCI            :     CIVIL ACTION
                        :
     vs.                :
                        :     NO. 02-2631
KLEIN, C.O., ET AL.     :


## ORDER


     AND NOW, this ____ day of July, 2003, upon
consideration of Defendants' Motion for Summary Judgment and
Plaintiff's response thereto, it is hereby ordered that the
Motion is GRANTED and Judgment is hereby entered in favor of all
of the defendants as a matter of law.

BY THE COURT:

_____
J.CURTIS JOYNER,          J.